# The Pennsylvania Railroad Company *versus* Parke et al.

*Estates upon Condition.—Parkesburg Railroad Station.—Right of Pennsylvania Railroad Company to remove Fixtures and Machinery under the Deed by which the Land was granted to the State.— What Abandonment will warrant the Re-entry of Grantor.*

1. Where land is granted in fee simple to be occupied for railroad purposes only, and to revert to the grantor or his heirs if used for any other purposes or no longer needed for such use, the reversion does not take effect until actual abandonment; and hence until that time the railroad company, grantees, may remove the machinery in their shops erected on the land granted.

2. One by deed in 1835 granted a lot of land and water-rights to the state, then the owner of the Columbia railroad, in consideration of having the station, machine shops, &c., erected upon his land. After his death, his heirs in 1851 granted to the state an adjoining lot with water-rights for the use of the state railroad, for a similar consideration; by the conditions in both deeds, the lots, water-rights, &c., were to revert to the donor, his heirs or assigns, if used for any other purposes than those for which they were granted, or if no longer needed for those purposes. In 1860, the Pennsylvania Railroad Company, vendees of the state, gave notice that on or about the 1st of April ensuing, they would cease to use and occupy the machine shops and other buildings erected on the lots granted, and removed the machinery, which was claimed by the heirs, on the ground that when notice of intention to abandon was given, it was an immediate abandonment, and the company could remove nothing afterwards.

[Pennsylvania Railroad Company *v.* Parke *et al.*]

*Held,* That as the lots and rights granted were by the deeds to revert " as if they had never been given to the state," and as the state held a fee simple up to the breach of condition by actual abandonment, the railroad company had the right, up to that time, to remove the machinery, and were not accountable to the heirs therefor.

ERROR to the Common Pleas of *Chester county.*

This was an amicable action entered in the court below, by Robert Parke, David Parke, John G. Parke, Francis G. Parke, Thomas H. Parke, Isabella Parke, and Benjamin I. V. Miller and Mary his wife, as plaintiffs, and the Pennsylvania Railroad Company as defendant, in which the following case was stated for the opinion of the court in the nature of a special verdict :—

John G. Parke, deceased, ancestor of the above-named plaintiffs, and under whom they claim, being seised in his demesne as of fee of the real estate hereinafter mentioned, situate in Sadsbury township, Chester county, on the line of the Philadelphia and Columbia Railroad, by his indenture, dated December 30th, A. D. 1835, a copy of which is hereto annexed, and made part of this case, granted and conveyed, for the consideration therein mentioned, to the Commonwealth of Pennsylvania, for the use and purposes of said railroad, as in said deed specified, a certain lot of land, situate in the township aforesaid, together with the right to the water of a certain spring, &c., all of which is more particularly described and set forth in said deed.

On the 27th day of September, A. D. 1851, Samuel Parke, Francis Parke and Mary H. Parke his wife, Robert Parke, John Parke, and David Parke and Mary his wife, heirs and legal representatives of John G. Parke, deceased (all of whose legal rights in the premises are vested in the plaintiffs in this case), by their indenture (which was annexed and made part of the case), granted and conveyed to the said Commonwealth of Pennsylvania, a certain other lot of land, and water privileges, situate in the township of Sadsbury aforesaid, adjoining the lot first hereinbefore mentioned, for the consideration, uses, and purposes particularly set forth in said deed.

Both of the said deeds contained, among other things, the following proviso, viz. :—

" Provided, that if ever said lot and water-right, and their buildings, fixtures, and other appurtenances, or either of them, should not be any longer needed for the purposes for which they are granted, or if ever the state, her officers, agents, tenants, lessees, or assigns, or other occupiers of said lot and right, should undertake to appropriate, use, or apply *said lot* or water-right, or their appurtenances, to any other object than the *bonâ fide* purpose for which they are hereby given and conveyed to the state, then, and in that case, the said lot, water-right, privileges, and appurtenances, or either of them so abandoned or misused,

[Pennsylvania Railroad Company v. Parke et al.]

shall immediately revert to the donor (or donors), their heirs and assigns, and become a part of the real estate and its appurtenances from which they are hereby separated, as if it, or they, never had been given to the state."

Under and by virtue of an Act of Assembly of the Commonwealth of Pennsylvania, passed May 15th 1857, the defendant herein became owner and possessor of the said railroad, and took the same and its appurtenances, subject to all contracts and arrangements of the Commonwealth aforesaid, theretofore made by Act of Assembly or otherwise, for and in respect to the use of such works, and were to carry out the same with all persons interested therein in the same manner as the Commonwealth aforesaid, or its agents, were required to do by law, and as owner and possessor of said railroad, became owner and possessor of the lots of land and water privileges, granted by said indentures to the said Commonwealth, under and subject to the provisions of said Act of Assembly.

The said Commonwealth, during her possession of the same, erected upon said lots a machine shop and other buildings for the use of said railroad, and also fixed and erected in the said machine shop and buildings, divers fixtures and machinery for the use and purposes of the said railroad, and the business transacted thereon, such as was necessary, proper, and usual for carrying on the business of such a machine shop, some of which were attached to the buildings by bolts and screws, some by masonwork and others by their own weight upon the floor (a copy of a schedule of which fixtures and machinery taken at the instance of the parties, was annexed as part of the case, and valued altogether at the sum of $12,137. The railroad tracks in the buildings and on the premises were not valued, though claimed by the Messrs. Parke).

The said defendants succeeded to the ownership and possession of the said machine shop and other buildings erected by said Commonwealth, and also to all the said fixtures and machinery, and continued in the possession and ownership of the same up to the 1st of April 1861.

Some time in December 1860, the defendants determined to cease to use and occupy the said machine shop, and other buildings, on or about the 1st of April then next ensuing, of which intention the plaintiffs were soon after verbally informed by the defendants.

In March 1861, the defendants removed the said machinery and fixtures, except the turn-table and transfer-table, from the premises, against the will and remonstrance of the said plaintiffs, who claimed the same as belonging to them, and on or about the 1st day of April, ceased to use and occupy the said machine shop and buildings, except the use of said tables, which is still con-

6 Wr.—3

[Pennsylvania Railroad Company *v.* Parke *et al.*]

tinued by them under an agreement with the plaintiffs, at a rent of one dollar per annum.

The question for the opinion of the court is, whether, under these circumstances, the defendants had the right to remove the said fixtures and machinery.

If the court shall be of opinion they had no such right, then judgment to be entered for the plaintiffs for $9937.

If of the opinion they had such right, then judgment to be entered for the defendants.

The costs to abide the event, and either party to be at liberty to sue out a writ of error.

The court below gave judgment in favour of plaintiffs for $9937.

The case was thereupon removed into this court by the defendant, where the judgment of the court below on the case stated was assigned for error.

*William Darlington* and *Theodore Cuyler*, for plaintiffs in error. —1. The first question is, what kind of estate had the Pennsylvania Railroad Company, as assignees of the Commonwealth, in the premises. The conveyance is to the state of Pennsylvania and her assigns, and the covenant of the grantor is with the state and her assigns. All the necessary and proper words to convey a fee are employed, and a fee is necessarily conveyed: 4 Kent 9. But the condition annexed makes it a qualified fee—a fee determinable upon a condition subsequent, or, as it is sometimes called, a base fee.

The proprietor of a qualified or base fee has the same rights and privileges over his estate, till the contingency upon which it is limited occurs, as if he were tenant in fee simple: 2 Com. 109, n. 9; Walsingham's Case, Plowd. 557; 4 Kent 10.

A tenant in fee simple may do what he pleases with his estate. The estate, in this case, to use the language of Blackstone, 2 Com. 109, "is a fee, because, by possibility, it may endure for ever in a man and his heirs." Who shall restrain the proprietor? He is not impeachable for waste. No action known to the law lies against him at the suit of any one for cutting down trees or pulling down houses on his estate. Nor would equity enjoin such an act.

The books are destitute of any authority sanctioning preventative or remedial proceedings against the owner of the fee for alleged waste, either by estrepement, injunction, or action.

2. This unrestricted right of the proprietor continued until actual abandonment, on the 1st of April 1861. Prior to that time all the machinery and fixtures in question were removed. The plaintiffs below suppose the right to remove was at an end the moment the defendants determined to remove. But a purpose

[Pennsylvania Railroad Company *v.* Parke *et al.*]

to remove at a future day is not abandonment, any more than a purpose to misuse at a future day is misuser.

The construction contended for would confound all distinctions of language. Nothing less than actual cessation of the use of the premises for the purposes for which they were granted, or actual use of them for other purposes than those for which they were granted, will constitute " abandonment" or "misuse" within the meaning of the deed. The defendants did not "cease to use" the premises until the 1st of April, and consequently no " abandonment" occurred till that time.

3. Nothing but the " lot, water-right, and privileges" granted reverts upon the happening of the condition. This is the language of the deed. Nothing else can fairly be supposed to be within the contemplation of the parties at the time of the grant. There was no obligation on the state to erect any buildings there, and she might have left the premises next day after the deed was made. It was her privilege to build or not build, and to remove or not remove, what she should erect. Improvements costing many thousand dollars were erected, and are left for the use of the plaintiff. The defendants might have removed them all, and the " lot, water-right, and privileges" would remain to revert, according to the terms and spirit of the deed.

4. Possibly the estate of the defendants might be considered a tenancy at will. If so, it was an estate determinable at the will of the lessee. There is nothing to prevent a perpetual lease of land without livery, or a lease that may become perpetual at the pleasure of the lessee: Effinger *v.* Lewis, 8 Casey 370.

If this view of the case be correct, then the tenant may remove trade fixtures erected by him at any time before the expiration of his lease. Tenant for life and for years alike enjoy this right, and no reason is perceived why a tenant at will should not enjoy the same privilege: Gray *v.* Holdship, 17 S. & R. 415, and subsequent cases, down to White's Appeal, 10 Barr 252.

These fixtures being erected by the state for the benefit of the trade she carried on there, the case falls within the principle stated, and her assignee had a right to remove them before abandoning the premises.

*William M. Meredith* and *Joseph Hemphill*, for defendants in error.—1. We agree that the Commonwealth would have taken an absolute fee simple, were it not for the limitation contained in the recital, which shows for what purpose the estate was granted, and the events stated in the proviso, by which the estate is to be determined and revert to the donor. These limit the fee simple, and reduce it to an estate of lower order, which Preston, in his work on Estates, vol. 1, 431, calls a determinable fee; which he defines " as an interest which may continue for ever,"

and says "that it is a quality of this estate, while it falls under this denomination, that it is liable to be determined by some act or event, expressed on its limitation, to circumscribe its continuance, or inferred by the law as bounding its extent."

Assuming that the owner of such an estate has the full powers of a tenant in fee simple, before the happening of the event or contingency upon which the estate is to determine, he can do everything that accords with the purpose or use for which the estate was granted, with the *bonâ fide* purpose of continuing in this use of the property. But it cannot be done to the injury of the interest of the grantor after the grantee has determined to abandon, as contended for in the second point of the plaintiff in error.

2. In answer to the second point of the argument, we contend, that as soon as the grantees had determined "that said lot and water-right, and their buildings, fixtures, and other appurtenances, or either of them, were no longer needed for the purposes for which they were granted," and gave notice to the grantors that they would cease to use and occupy the same on or about the 1st of April ensuing, from that time the powers of the grantees over the property entirely changed, and that it was a fraud upon the contract of the parties, as collected from the deeds, for the grantees, in any manner, to dismember or diminish the value of the property, and a clear violation of the spirit and purpose of the contract.

The lot, buildings thereon, and fixtures, all constitute the realty, and therefore the plaintiff has been compelled to argue that the company had not only a right to remove the fixtures, but also the buildings, and everything, even the shade trees, and restore to us the lot naked as the Commonwealth received it.

We deny that the contract warrants any such conclusion, and insist that it was in consideration of the advantages to him of having a water station, and public buildings, &c., upon his estate, and being desirous to facilitate the operations of the state, that J. G. Parke granted the lot in question.

If this was all that was said in the deed with respect to the purposes and consideration of the grant, the estate vested in the grantee would have been a fee determinable upon the failure of the Commonwealth to build in a reasonable time, or the use of the lot for other purposes than those designated, and upon such failure, or misuse, the estate of the grantor would revert to him. But the parties insert in the deed a proviso, in order to prevent all doubt of their meaning. The grant was in consideration of the buildings being erected thereon, and the proviso was intended to operate as a penalty, to keep them there for the use originally intended, for ever.

Can there be any reasonable doubt about the intent of the

[Pennsylvania Railroad Company *v.* Parke *et al.*]

parties as collected from the deed? Did not both intend that, upon the failure of the state to possess and use the property for the purpose granted, it should return to the grantor, not in its unimproved state, as granted, but with all and every improvement and fixture constituting "the lot or piece of land" as it existed when the grantee determined to cease to use it, and gave notice of a purpose to abandon? These improvements were contemplated by the parties at the time of the execution of the deed. The deed, in substance, says so.

If such was the intention, then the rule of law, with respect to deeds and contracts, is "to put such a construction upon them as will effectuate the intention of the parties, if such intention be consistent with the principles of law:" 4 Dallas 347; 3 W. & S. 303.

It is argued that inasmuch as defendants below remained in possession until the 1st of April, that therefore they did not abandon, and did not cease to use them for the purposes for which they were granted; although it is admitted they had severed and moved all the fixtures which constituted the building a machine or work shop. We reply that they ceased using the premises according to the purpose of the grant (if not when they gave us notice of their intention to do so) certainly at the moment they commenced doing that which disabled them from using the premises for the purposes for which they were granted, to wit, the removing of all the machinery and fixtures and appurtenances necessary in such a building for the use of the railroad.

How could they use the premises for the purpose originally intended, when they were removing the fixtures which, by their erection, they admitted to be necessary for the purposes of the building?

3. The third point of the plaintiff in error alleges that nothing reverted but "the lot, water-right, and privileges" granted. This point is answered in our observations upon the previous point. The use of these words in the proviso had reference only to the title of the grantor, and were not intended to convey the idea that the improvements upon the lot were not also to revert as part and parcel of the lot, being made such by law. The spirit and legal effect and intention of the deed, is, that the lot, buildings, fixtures, and other appurtenances, should revert together, and could not be legally separated. By their connection as fixtures they all became part of the "lot or piece of land" granted.

The assertion by the plaintiff in error that "improvements costing many thousand dollars were erected, and are left for the use of the plaintiffs below, although not proper to be made here, may be answered by stating that defendants have no desire to be the owners of them, but prefer that the plaintiffs in error should continue to use and enjoy them as heretofore, considering the

abandonment of the location by the Commonwealth's assignees as a misfortune, which must also involve many innocent property-holders in Parkesburgh in a serious depreciation of their property.

4. The fourth point of the other side is inconsistent with the ground first taken, is not relied on by the party, and certainly is not sustained by the authority cited to support it. The deed by which the Commonwealth and her assignees held the lot, &c., cannot be construed as a lease, and therefore the law of fixtures as between landlord and tenant has no application here.

The law upon the subject is well settled under the first position taken by the plaintiff in error, to wit, that the articles removed were fixtures, as will be seen by reference to Christian *v.* Dripps, 4 Casey 271; Overton *v.* Williston, 7 Id. 115; Voorhis *v.* Freeman, 2 W. & S. 116; Gray *v.* Holdship, 17 S. & R. 413; Roberts *v.* Dauphin County Bank, 7 Harris 71.

The opinion of the court was delivered, February 10th 1862, by READ, J.—John G. Parke, deceased, and the ancestor of the plaintiffs below, being seised in fee of certain real estate situate in Sadsbury township, Chester county, on the line of the Philadelphia and Columbia Railroad, by deed dated December 30th, A. D. 1835, granted and conveyed a lot or piece of land, part of said real estate, to the state of Pennsylvania and her assigns.

By the recital in this deed, it appears that the proper officers of the state had located a water station and erected a reservoir for the use of the Philadelphia and Columbia Railroad upon the property of the said Parke, opposite to or near to the junction of the McCall's Ferry and Lancaster and West Chester State Road, in said township, and were about to erect at the same place engine-houses, workshops, and other buildings, fixtures, and appurtenances necessary to the use of the said state railroad; and therefore the said Parke, in consideration of the advantage to him of having said water station and public buildings, &c., upon his estate, and being desirous to facilitate the operations of the state, granted to the state the above-mentioned lot thereinafter particularly described, together with a right to so much of the water of the spring then running through pipes laid by the said Parke to his said public-house and the said water station, as may be necessary to supply the steam-cars of the state or her assigns, and also the steam-engine about to be erected on the lot thereby conveyed; first reserving for the use of the said public-house and its appurtenances, so much of the water as may be necessary. The remainder of the water, after the right granted to the state, belonging exclusively to the said Parke, his heirs and assigns. The state or her assigns to keep the pipes in repair, and to supply and lay down others when necessary or expedient, and to have the privilege of adding, if necessary, the water of

any other spring on that side of the creek on the land of the said Parke capable of being brought along said pipes to a proper level.

By a deed dated the 27th September 1851, the children and heirs of the said John G. Parke granted to the state two hundred and sixty-five feet square of land adjoining on the southern side of the old state lot above mentioned. By the recitals it appears that on the first lot the Pennsylvania state shops, workmen's dwellings, and other buildings, engines, fixtures, and appurtenances were erected, and that the second lot was required for the purpose of erecting thereon for the further use and accommodation of the Columbia and Philadelphia State Railroad, a locomotive depot and other public buildings, engines, fixtures, and appurtenances. The consideration expressed is similar to that in the first deed, and a similar water privilege is given by this conveyance to this lot to that attached to the first lot. In each deed there was a proviso or condition in the following words : " Provided, that if ever said lot and water-right, and their buildings, fixtures, and other appurtenances should not be any longer needed for the purposes for which they are granted, or if ever the state, her officers, agents, tenants, lessees, or assigns, or other occupiers of said lot and right, should undertake to appropriate, use, or apply said lot or water-right, or their appurtenances, to any other object than the *bonâ fide* purpose for which they are hereby given and conveyed to the state, then and in that case the said lot, water-right, privileges, and appurtenances, or either of them so abandoned or misused, shall immediately revert to the donor, his heirs and assigns, and become a part of the real estate and its appurtenances, from which they are hereby separated, as if it or they never had never been given to the state."

Under and by virtue of an Act of the General Assembly of the State of Pennsylvania, entitled " An Act for the sale of the main line of the public works," passed 15th May 1857, the secretary of the Commonwealth, under the great seal of the state, transferred to the Pennsylvania Railroad Company, their successors and assigns, *inter alia*, the Philadelphia and Columbia Railroad, and their two lots of ground above mentioned. It is clear that the state had, and of course its assignee the Pennsylvania Railroad Company had, a fee simple in these lots which, if the conditions were not broken, might last for ever.

The condition, in fact, was twofold ; one was, that if the state or her assigns should undertake to appropriate, use, or apply said lot or water-right or their appurtenances to any other object than the *bonâ fide* purpose for which they were given or conveyed, then the same or either of them so misused, shall revert to the donor (or donors), their heirs and assigns. This condition or part of the condition never was broken, and it therefore forms

[Pennsylvania Railroad Company *v.* Parke *et al.*]

no part of this case.   The other condition was:  "That if ever said lot and water-right, and their buildings, fixtures, and other appurtenances, or either of them, should not be any longer needed for the purposes for which they are granted," then and in that case the said lot, water-right, privileges, and appurtenances, or either of them so abandoned, "shall immediately revert to the donor (or donors), their heirs, and assigns, and become a part of the real estate and its appurtenances from which they are hereby separated, as if it or they never had been given to the state."

The state and its grantee had the clear right to add to, alter, and diminish any buildings erected by themselves, and also to remove all fixtures and machinery, and replace them if they deemed it expedient, or put in new ones or other descriptions of machinery, for the purposes of the road, or finally to remove them altogether.   This is not denied by the plaintiffs, but they say that the defendants having notified them of their intention to abandon, that was an immediate abandonment, and they could remove nothing afterwards.  The condition is, that if they should be no longer needed, then the notice in reality was, that they would be no longer needed after, say the 1st of April 1861, for that is the true meaning of that part of the case stated.   "Some time in December 1860, the defendants determined to cease to use and occupy the said machine shop and other buildings on or about the 1st of April then next ensuing;" that is, that they *then* would not be any longer needed, "of which intention the plaintiffs were soon after verbally informed by the defendants;" all this relates to their not being needed after that day; and it would have been no clearer, though somewhat stronger, if the time fixed had been the 1st of April 1871; and this is definitely fixed by the preceding sentence in the case stated.   "The said defendants succeeded to the ownership and possession of the said machine shop and other buildings erected by said Commonwealth, and also to all the said fixtures and machinery, and continued in the possession and ownership of the same up to the 1st of April 1861."   That is, their possession and ownership were the same up to that date as it had uniformly been since their purchase in 1857; and it is clear that if they had changed their minds before their actual abandonment and consequent breach of the condition, they could have continued their ownership as tenants in fee simple indefinitely.

It is clear, then, that the defendants had the right to remove, as they did, the fixtures and machinery mentioned in the schedule annexed as part of the case.   This right also appears to be recognised by the very words of the condition, for the reverter to the grantors is to be of "the said lot, water-right privileges, and appurtenances, or either of them so abandoned, and which are

to become a part of the real estate *from which they are thereby separated,* as if it or they never had been given to the state;" excluding in terms the idea that the fixtures and machinery of the state were to revert to persons who never had owned them.

The founder of Parkesburg and his heirs have received large benefits from the state—a town has been built by state patronage, and the two lots are returned to their original owners covered with valuable buildings. The plaintiff's case is deficient in law, and clearly so in common equity.

Judgment reversed, and judgment on the case stated for the defendants.