Lacy, Appellant, *v.* East Broad Top Railroad and Coal Co.

Argued November 17, 1950. Before HIRT, RENO, DITHRICH, ROSS, ARNOLD and GUNTHER, JJ. (RHODES, P. J., absent).

*Samuel H. Stewart,* for appellant.

*Robert H. Henderson,* for appellee.

OPINION BY RENO, J., January 12, 1951:

Elizabeth Lacy sued the East Broad Top Railroad and Coal Company in ejectment for 193 acres of land in Dublin Township, Huntingdon County, alleging that the railroad had acquired title thereto by eminent domain proceedings and had subsequently abandoned the

premises. The railroad disclaimed title to all of the described land except 10.42 acres, and concurrently filed preliminary objections to plaintiff's complaint which were sustained by the court below with leave to amend. To plaintiff's amended complaint the railroad renewed its preliminary objections, and they were sustained by the court below which entered final judgment against plaintiff from which she appealed. .

Plaintiff's theory is that through the condemnation proceedings the railroad acquired a base or conditional fee in the lands in controversy and that title thereto reverted to her when the railroad terminated its use of the land for railroad purposes. The amended complaint, whose material and relevant facts we accept as true for the purposes of this review, avers that the railroad actually abandoned the right of way which embraces the 10.42 acres in question, and secured a certificate of public convenience from the Pennsylvania Public Utility Commission authorizing the abandonment. Notwithstanding that the certificate was issued upon the railroad's application, it now contends that the Commission is without power to authorize abandonment of a right of way, and that its order merely permitted the railroad to discontinue *service* over the branch line. This contention was sustained by the court below. Its judgment will be reversed.

The gist of the preliminary objections is that plaintiff has not exhibited a cause of action. All doubts must be resolved against a summary judgment, and such a judgment can be entered only in a clear case. Accordingly, the question for decision is not whether the complaint is so clear in both form and specification as to entitle plaintiff to proceed to trial without amendment, but whether upon the facts averred it shows, as a matter of law, that plaintiff is not entitled to recover. *Rhodes v. Terheyden*, 272 Pa. 397, 116 A.

364. In determining whether a final judgment should be entered upon preliminary objections the question before the court is not solely whether, under the facts as stated, plaintiff can recover but whether the claim as stated excludes the possibility of recovery under a better statement of the facts. *Adler v. Helsel,* 344 Pa. 386, 25 A. 2d 714.

By condemnation proceedings a railroad acquires a "base or conditional fee, terminable on the cesser of the use for railroad purposes": *Pa. Schuylkill Val. R. R. v. Reading Paper Mills,* 149 Pa. 18, 20, 24 A. 205. The land thus acquired by the railroad is held by it as a public trust, which it may abandon only with the consent of the Commonwealth. *A. D. Graham & Co. v. Pa. Turnpike Com.,*[1] 347 Pa. 622, 33 A. 2d 22; *Conwell v. P. & R. Rwy. Co.,* 241 Pa. 172, 88 A. 417; *Erie & N. E. R. R. Co. v. Casey,* 26 Pa. 287. The consent of the Commonwealth may be evidenced by an Act of the General Assembly, *Lauman v. Lebanon Valley R. R. Co.,* 30 Pa. 42, or by an official authorized by it to act on its and the State's behalf.[2] The legislature's super-

[1] When reading the *Graham* case, the main prop of the railroad's position, it must be borne in mind (p. 639) that the South Pennsylvania Railroad Company had never applied for or secured the consent of the legislature or of the Commission to abandon its right of way. Moreover, it appears, (p. 624) that the railroad acquired a *fee simple title* to its right of way, and necessarily the doctrine of abandonment was not applicable. The *Graham* case does not control this decision except for the proposition for which it has been cited.

[2] At the argument it was suggested that the Attorney General was authorized to consent to an abandonment. If so, the authority must be found in a statute, for certainly it is not within the scope of his common law powers. *Com. ex rel. Minerd v. Margiotti,* 325 Pa. 17, 188 A. 524. The only statute which specifically empowers him to act with respect to railroads is the Act of May 31, 1907, P. L. 352, 67 P.S. §§761, 762, which directs him to enforce

visory power in respect of railroads has been committed and delegated to the Public Utility Commission which is "an administrative arm of the legislature", whose members are "deputies of the general assembly to perform legislative work." *Com. ex rel. v. Benn,* 284 Pa. 421, 434, 436, 131 A. 253. It is the representative of the legislature to the extent of its statutory powers. *Phila. v. P. S. C.,* 84 Pa. Superior Ct. 135. The Public Utility Law of May 28, 1937, P. L. 1053, §202, as amended, 66 P.S. §1122, authorizes it to grant a certificate of public convenience: "For any public utility to dissolve, or to *abandon* or surrender, in whole or in part, any service, right, power, franchise, or privilege." (Emphasis added.) The Commission is thereby abundantly empowered, on behalf of the Commonwealth, to consent to an abandonment, whether of service or of essential rights and privileges, and except for the legislature itself, is the only organ of government which may grant the Commonwealth's consent.[3] The Commission's certificate of public convenience is the authoritative token of the formal consent of the Commonwealth to an abandonment or surrender.

---

Art. XVII, §5, of the Constitution. Possibly under that Act he might proceed against a railroad which was holding land not "necessary for carrying on its business", but it does not authorize him to consent to an abandonment.

[3] The Commission has in fact freely exercised this power, and its orders for abandonment of rights of way have been reviewed and frequently affirmed by this Court. *Jennings v. P. U. C.,* 140 Pa. Superior Ct. 569, 14 A. 2d 882; *West Penn Rwys. Co. v. P. U. C.,* 142 Pa. Superior Ct. 140, 15 A. 2d 539; *Irwin Boro. v. P. U. C.,* 142 Pa. Superior Ct. 157, 15 A. 2d 547; *West Penn Rwys. Co. v. P. U. C.,* 135 Pa. Superior Ct. 89, 4 A. 2d 545. Cf. *Crown Products Co. v. P. U. C.,* 152 Pa. Superior Ct. 345, 31 A. 2d 913.

As the record now stands,[4] it seems reasonably clear that the railroad applied for and secured a certificate authorizing it to abandon a portion of its right of way. Annexed to the amended complaint are two Commission orders; one dated January 25, 1943, relating to the railroad's Shade Gap Branch between Shade Gap and Neelyton; the other dated December 30, 1947 relating to the same branch between Blacklog and Shade Gap. Whether the land in question is covered by both or only one of the orders does not appear. (The amended complaint, as will later appear, is not drawn with desirable particularity as to these and other details.) The orders do not upon their face support the railroad's contention that it applied for and secured only permission to discontinue its service upon a right of way which it expressly reserved for future use. Both orders are captioned as applications "for approval of the abandonment" of described portions of the railroad's Shade Gap Branch. In the 1947 order the Commission found as a fact "that *the abandonment of the Shade Gap Branch* . . . is necessary or proper for the service, accommodation, convenience or safety of the public." In the prior order it found that "the *discontinuance of operation on, and the abandonment of,* that portion of the Shade Gap Branch" was likewise necessary and proper. (Emphasis added.) In both instances the certificate evidenced the approval of the applications to abandon, without restricting the abandonment to service only, and without any other qualification. Conditions were indeed attached to the orders

---

[4] The amended complaint exhibits only the final orders of the Commission. The railroad's petitions and the testimony have not been pleaded; very properly so, since they are matters of proof. It is conceivable that the petitions and the testimony may clarify doubts concerning the expression of the railroad's intention. Our conclusion upon the nature of the petition and the proceedings before the Commission is based exclusively upon the text of the orders.

and these, so far from showing that they applied only to service, indicate an intention on the part of the railroad, approved by the Commission, to cease permanently the use of the right of way for railroad purposes.

In the 1947 order the Commission found that passenger service had not been furnished on the branch line after 1935, and no freight service since August 1, 1947. The application was approved upon condition that all grade crossings be abolished, and the Commission allowed the railroad to take up the tracks on *the line of railroad abandoned and dismantled*, and use them upon other parts of its system. The 1943 order was granted upon the condition that all bridges over streams be removed, that grade crossings be abolished, that all "rails, ties, signs and other facilities" be removed within the limits of the highways at the crossings with proper provision for the drainage thereof; that State Highway Route No. 31015 be regraded "for a distance of 50 feet on each side of the *abandoned track*." (Emphasis added.) These, and other conditions, particularly the taking up of rails and the destruction of bridges, signify an intention to terminate the use of the branch line for railroad purposes. Had a mere temporary or transitory discontinuance of service been in contemplation, the orders would undoubtedly have stated the fact specifically, and the rails and other facilities would have been allowed to remain in place for future use.

However, we do not rule, and plaintiff does not claim,[5] that the Commission's certificate in itself, without more, constitutes an abandonment. The Commis-

---

[5] In her amended complaint plaintiff averred "that the defendant has abandoned whatever rights it may have had thereunder [the condemnation proceedings] by ceasing to use the same for any of the purposes for which the said premises were con-

sion did not attempt to, and manifestly could not, determine or adjudicate the property or contractual rights of the parties to this litigation. *Citizens Pass. Ry. Co. v. P. S. C.*, 271 Pa. 39, 55, 114 A. 642. At most, the proceedings before the Commission constitute only the expression of the railroad's intention to abandon its right of way, the Commission's conditional approval of the plan of abandonment, and the consent of the Commonwealth thereto. To constitute an abandonment, there must be an intention to abandon, together with "external acts" by which the intention is carried into effect. *United Nat. Gas Co. v. James Bros. Lumber Co.*, 325 Pa. 469, 191 A. 12. The estate of a railroad does not terminate until there has been an actual abandonment. *Penna. R. R. Co. v. Parke*, 42 Pa. 31. Mere nonuser of a right of way does not constitute an abandonment. *Penna. R. Co. v. Freeport*, 138 Pa. 91, 20 A. 940; *Pbg., Ft. W. & C. Ry. v. Peet*, 152 Pa. 488, 25 A. 612. Whether the railroad has actually abandoned the right of way, whether it has acted upon and effected its expressed intention to abandon, so that plaintiff's reversionary rights became operative, is a question of fact to be determined at the trial. "The question of abandonment is one of fact for the determination of the jury, depending upon all the facts and circumstances disclosed by the evidence of each particular case": 44 Am. Jur., Railroads, §108. See also 51 C. J., Railroads, §§281, 282. For the same proposition applied in abandonment cases generally, see, e. g., *Aye v. Phila. Co.*, 193 Pa. 451, 44 A. 555; *Calhoon v. Neely*, 201 Pa. 97, 50 A. 967; *Llewellyn v. P. & R. C. & I. Co.*, 308 Pa. 497, 162 A. 429.

In the original complaint and in both of the rail-

---

demned as well as by permitting other persons than this plaintiff or itself to use the premises for purposes inconsistent with the said condemnation . . ."

road's preliminary objections[6] there are references to proceedings before the Interstate Commerce Commission for a certificate of abandonment. If reliance is placed upon that certificate it should have been pleaded in the amended complaint. (Our order will provide leave to amend.) It should be noted, too, that if the federal commission issued a certificate it based its action upon the Interstate Commerce Act of 1920, 49 U. S. C. A. §1 (18), which provides in part: ". . . no carrier by railroad subject to this chapter shall *abandon* all or any portion of a line of railroad, *or* the *operation* thereof, unless and until there shall first have been obtained from the commission a certificate that the present or future public convenience and necessity permit of such abandonment." (Emphasis added.) That legislation draws more clearly than our own Act the distinction between the abandonment of a railroad and the operation of it. Consequently the intention of the railroad to effect one or the other of these alternatives may be more certainly shown by the federal certificate than by the state certificate. In any event, consideration must be given to a question we are not called upon to decide upon the present record. Is the state certificate effective as a consent to an abandonment without a corresponding federal certificate and, as between them, which is the paramount expression of the railroad's intention? See, e.g., *Colorado v. U. S.*, 271 U. S. 153, 46 S. Ct. 452.

The judgment is reversed, the preliminary objections to the amended complaint are overruled, a procedendo is awarded with leave to plaintiff to amend her complaint further within such time as the court below may designate.

---

[6] To that extent the preliminary objection was a "speaking demurrer". We notice it in an effort to assist in securing a clearly defined issue before trial.