KANSAS CITY AREA TRANSPORTA-
TION AUTHORITY OF the ·KANSAS
CITY AREA TRANSPORTATION DIS-
TRICT, Respondent,

v.

James G. ASHLEY, Jr., and Olive J. Ash-
ley, Individually and as Executrix of the
Estate of James G. Ashley, Sr., d/b/a
Kansas City Public Service Freight Oper-
ation, Appellants.

No. 59472.

Supreme Court of Missouri,
en banc.

July 11, 1977.

L. R. Magee, Kansas City, for appellants.

Jack W. R. Headley, William K. Waugh,
III, Jack D. Rowe, Kansas City, for respon-
dent.

Phil Hauck, Erwin L. Milne, Trenton,
Aaron A. Wilson, Walter J. O'Toole, Jr.,
Kansas City, for amicus curiae.

BARDGETT, Judge.

This appeal arises from a condemnation
proceeding brought by the Kansas City
Area Transportation Authority of the Kan-
sas City Area Transportation District
(ATA) against defendants-condemnees, the
Ashleys. The Ashleys appealed to the court
of appeals, Kansas City district, after a jury
verdict assessing damages at $175,000 for
the taking of the right of way and operat-
ing equipment of a freight railroad operat-
ed by the Ashleys. The court of appeals
reversed and remanded with directions to
enter an order of dismissal. We transfer-
red the case to this court pursuant to art. V,
sec. 10, Mo.Const.

A short synopsis of the relevant facts is
all that is necessary. ATA was organized
under a compact agreement between the
state of Kansas and the state of Missouri.
This compact was authorized by the legisla-
ture and is set forth in full in section 238.-
010, RSMo 1969. Section 238.030 authoriz-
ed the ATA to seek the approval of Con-
gress for the compact. The approval of the
Congress of the United States was obtained
in 1968 under Public Law 89–599, 80 Stat.
826.

The Ashleys, defendants in the condem-
nation suit, are a copartnership, the imme-

diate grantees of the Kansas City & Westport Belt Railway Co. The Ashleys purchased from the railway company an operating freight line and in addition acquired a right-of-way easement which ATA now seeks to condemn. The transfer from the railway company to the Ashleys was approved by the Interstate Commerce Commission (ICC) as evidenced by its certificate and order. The property sought to be condemned extends generally from a point at 40th and Main street in Kansas City, Missouri, to a switching facility located in the southwestern portion of Jackson county, Missouri. The right of way varies from 50 to 100 feet in width and has several lots or parcels appurtenant to it used for a variety of purposes at the present time, but which were originally used for railroad purposes in the switching and loading of freight trains.

From 1957 to 1962 the Ashleys performed all freight switching operations over the right of way as an independent contractor for the Kansas City & Westport Belt Railway Co. In 1962 the Ashleys negotiated for and purchased the railroad right of way and rights to continue the switching operations. In 1968, however, after a decline in business, the Ashleys, with the approval of the ICC embargoed the entire railroad. This embargo meant the Ashleys would no longer accept any freight traffic or deliver any freight on any point of the railroad. Such embargo has continued through the present. It appears that all of the parties and the ICC view this as an operating railroad regardless of the embargo and the present physical condition of the track, roadbed, and equipment.

Although a number of contentions are made by appellants contesting the right of the ATA to acquire their right of way by condemnation, the decisive fact which controls our decision in this case is that appellant-railroad is a common carrier engaged in interstate commerce and is, therefore, under the jurisdiction of the ICC. 49 U.S.C. sec. 1. It is true that appellant-railroad has

rendered no service since appellants sought and obtained the consent of the ICC to an embargo of its entire line of track in 1968. Furthermore, a reading of prior cases involving this appellant and this right of way, together with the record and briefs in this case, strongly indicates that there has been a de facto abandonment of all railroad service by appellants and that no resumption of railroad service by this appellant-railroad is anticipated in the foreseeable future. *Seventy-Ninth Street Improvement Corp. v. Ashley*, 509 S.W.2d 121 (Mo.1974); *Kansas City Area Transportation Auth. v. Ashley*, 478 S.W.2d 323 (Mo.1972); *Kansas City v. Ashley*, 406 S.W.2d 584 (Mo.1966); *Kansas City Area Transportation Auth. v. Ashley*, 485 S.W.2d 641 (Mo.App.1972).

The effect of ATA's condemnation action, if successful, would be that it would take over the entire railroad right of way and bring about a permanent and total cessation of railroad service by appellant-railroad as well as any other railroad over this entire line of track. The appellant-railroad, however, remains under the jurisdiction of the ICC and the legal abandonment of its line of track or discontinuance of service can only be accomplished by order of the ICC. 49 U.S.C. sec. 1a(1); *Commonwealth v. Bartlett*, 384 F.2d 819 (1st Cir. 1967), 266 F.Supp. 390 (U.S.D.C.Mass.1967); *New Orleans Terminal Company v. Spencer*, 366 F.2d 160 (5th Cir. 1966); *City of Des Moines, Iowa v. Chicago & N.W. Ry. Co.*, 264 F.2d 454 (8th Cir. 1959).

Title 49 U.S.C. sec. 1a(1) prohibits any railroad subject to that chapter from abandoning all or any portion of its lines of railroad[1] or discontinuing rail service without a certificate issued by the ICC. It also provides: "Abandonments and discontinuances shall be governed by the provisions of this section or by the provisions of any other applicable Federal statute, notwithstanding any inconsistent or contrary provision in any State law or constitution, or any decision, order, or procedure of any State administrative or judicial body." Under

1. Certain types of trackage are exempted which are not pertinent to this case but which

were the subject of *Seventy-Ninth Street Development Corp. v. Ashley, supra.*

other provisions of Title 49 U.S.C. sec. 1a, the ICC is required to consider a number of factors in arriving at a decision regarding abandonment and is afforded the alternative of allowing another to provide rail service over the line of track (49 U.S.C. sec. 1a(6)), or allow a disposition of the properties for other public purposes, including mass transportation (49 U.S.C. sec. 1a(10)).[2]

Although the federal act does not specifically provide for the petition for abandonment or a petition seeking to revoke or terminate a certificate of convenience and necessity previously issued to be filed by an interested party, such as ATA, federal cases hold that such may be done. See *Commonwealth v. Bartlett, supra,* and *New Orleans Terminal Co. v. Spencer, supra.*

We do not believe the ICC will allow this appellant-railroad to persist in a nonservice (embargoed) status and continue to exist under the facade of an operating railroad merely to keep a right-of-way easement in a metropolitan area out of public use in the face of the congressional intent evidenced by 49 U.S.C. sec. 1a(10), which clearly demonstrates a national policy that unused railroad right of ways be utilized where feasible for other public purposes.

The other issues briefed by the parties need not be reached. The ICC is the agency which, at the present time, has jurisdiction of the matters involved in this case. The court erred in overruling appellants' motion to dismiss.

The judgment is reversed and remanded with directions to enter an order of dismissal.

MORGAN, C. J., and HENLEY, FINCH, DONNELLY and SEILER, JJ., concur.

RENDLEN, J., not participating because not a member of the court when cause was submitted.

2. "(10) In any instance in which the Commission finds that the present or future public convenience and necessity permit abandonment or discontinuance, the Commission shall make a further finding whether such properties are suitable for use for other public purposes, including roads or highways, other forms of mass transportation, conservation, energy production or transmission, or recreation. If the Commission finds that the properties proposed to be abandoned are suitable for other public purposes, it shall order that such rail properties not be sold, leased, exchanged, or otherwise disposed of except in accordance with such reasonable terms and conditions as are prescribed by the Commission, including, but not limited to, a prohibition on any such disposal, for a period not to exceed 180 days after the effective date of the order permitting abandonment unless such properties have first been offered, upon reasonable terms, for acquisition for public purposes.