452 A.2d 1035

**Kenneth G. WALDO, Appellant,**

v.

**BESSEMER & LAKE ERIE RAILROAD COMPANY, a Pennsylvania Corporation.**

Superior Court of Pennsylvania.

Argued Oct. 13, 1981.

Filed Oct. 15, 1982.

Reargument Denied Dec. 22, 1982.

Petition for Allowance of Appeal Denied March 14, 1983.

Arnold L. Schulberg, Pittsburgh, for appellant.

Henry M. Wick, Jr., Pittsburgh, for appellee.

Before JOHNSON, MONTEMURO and MONTGOMERY, JJ.

MONTEMURO, Judge:

The instant case began as an action in Equity for a determination of a leasehold interest in land used as a right-of-way by appellee railroad since 1892. Appellant, successor in interest to the original lessors, alleges that by May 2, 1973 the supposed right-of-way had been abandoned for all intents and purposes, and that by letter of June 19, 1973 he informed the appellee that under the terms of the leasehold agreement the property had reverted to him. It is undisputed on the record that at present trees have grown up between the tracks and that the tracks and ties are completely buried in various locations. It is also undisputed on the record that a portion of the same right-of-way located on the appellant's property has already been the subject of an Interstate Commerce Commission [hereafter "I.C.C." or "Commission"] determination of abandonment.

Appellant filed his complaint on May 9, 1979; appellee filed preliminary objections on June 27, 1979, alleging that the I.C.C. had exclusive jurisdiction over "abandonment of railroad branch lines"; that appellant had not exhausted statutory remedies; and that the leasehold issues could not be determined by the I.C.C.

After hearing on the matter, the trial court dismissed the complaint, deferring to jurisdiction in the I.C.C. We disagree and reverse for the following reasons:

We find considerable merit in appellant's argument that the wording of the Interstate Commerce Licensing Act [The Act] clearly contemplates that the provisions therein would be utilized by petitioner *railroads*. Samples of the language in two of the sections as quoted below assuredly support this contention.

## § 10903. Authorizing abandonment and discontinuance of railroad lines and rail transportation

(a) A rail carrier providing transportation subject to the jurisdiction of the Interstate Commerce Commission under subchapter 1 of chapter 105 of this title may—

(1) abandon any part of its railroad lines; or

(2) discontinue the operation of all rail transportation over any part of its railroad lines;

only if the Commission finds that the present or future public convenience and necessity require or permit the abandonment or discontinuance. In making the finding, the Commission shall consider whether the abandonment or discontinuance will have a serious, adverse impact on rural and community development.

## § 10904. Filing and procedure for applications to abandon or discontinue

(a)(1) An application for a certificate of abandonment or discontinuance under section 10903 of this title [49 USCS § 10903], and a notice of intent to abandon or discontinue, *must be filed with the Interstate Commerce Commission at least 60 days before the day on which the abandonment or discontinuance is to become effective.*

(2) *When a rail carrier providing transportation subject to the jurisdiction of the Commission under subchapter 1 of chapter 105 of this title [49 USCS §§ 10501 et seq.] files an application and notice of intent,* the notice shall include—

(A) an accurate and understandable summary of the rail carrier's application and the reasons for the proposed abandonment or discontinuance;

(B) a statement indicating that each interested person is entitled to recommend to the Commission that it approve, deny, or take other action concerning the application; and

(C)(i) a statement that the line is available for subsidy or sale in accordance with section 10905 of this title [49 USCS § 10905], (ii) a statement that the carrier will promptly provide to each interested party an estimate

of the subsidy and minimum purchase price required to keep the line in operation, calculated in accordance with section 10905 of this title [49 USCS § 10905], and (iii) the name and business address of the person who is authorized to discuss sale or subsidy terms for the carrier.

(3) *The rail carrier shall —*

(A) send by certified mail a copy of the notice of intent to the chief executive officer of each State that would be directly affected by the proposed abandonment or discontinuance;

(B) post a copy of the notice in each terminal station on each portion of a railroad line proposed to be abandoned or over which all transportation is to be discontinued;

(C) publish a copy of the notice for 3 consecutive weeks in a newspaper of general circulation in each county in which each such portion is located;

(D) mail a copy of the notice, to the extent practicable, to all shippers that have made significant use (as designated by the Commission) of the railroad line during the 12 months preceding the filing of the application; and

(E) attach to the notice filed with the Commission an affidavit certifying the manner in which clauses (A)–(D) of this paragraph have been satisfied, and certifying that clauses (A)–(D) have been satisfied within the most recent 30 days prior to the date the application is filed.

(b) *The burden is on the person applying for the certificate to prove that the present or future public convenience and necessity require or permit the abandonment or discontinuance. . . .* (Emphasis supplied)

It is undeniable, however, that upon rare occasions parties other than the railcarriers have been permitted to file for abandonment. In 1924 the court in *Thompson v. Texas Mexican Railroad Co.,* 328 U.S. 134, 66 S.Ct. 937, 90 L.Ed. 1132 stated that "persons other than carriers" may "take the initiative" under the Act. We note, however, that the

"persons" the court had in mind were a second railroad in a trackage arrangement with the primary carrier and a city and county, entities quite dissimilar to an individual holding a leasehold interest in land as appellant is herein.

Appellee has introduced into this record a recent decision of the I.C.C., dated October 2, 1981 and entitled "Modern-Handcraft-Abandonment in Jackson County Missouri." [1] ("Decision") (R. following p. 15). This decision appears to present recent action on a similar set of facts, but although we have found it most useful, we do not find it dispositive of the instant action. The case appears from its title to afford relief to a corporation whose land abuts the right-of-way therein discussed; in fact, however, the stronger applicant, and the one who eventually obtained relief, was Kansas City, which was also eager to have the right-of-way condemned. The corporate applicant had failed to get relief originally from a review board of the I.C.C. on grounds that it was unable to prove that the carriers did *indeed* "intend" to abandon the line. (This, despite the fact that in that case, as in this, a patent abandonment had taken place.)

Meanwhile, the city had pursued a court case in an effort to have the property condemned.[2] The Decision of the I.C.C. states that the attempts of the State of Missouri to have the property condemned had been repeated over "many years." The State Supreme Court denied relief and returned the case to the jurisdiction of the I.C.C. The city and the corporate applicant now combined as applicants before the I.C.C. to obtain an abandonment decision despite the railroad's opposition. The subsequent decision by the I.C.C. determined the issues solely on the arguments of the city, not the corporate applicant.

The I.C.C. at last took the matter in hand and made a firm decision. It heartily rejected the concept that jurisdictional arguments could properly be used

1. Finance Docket No. 293301, embracing also Finance Docket No. 29485, Decided September 30, 1981, service date October 2, 1981.

2. *Kansas City Area Transportation v. Ashley,* Mo., 555 S.W.2d 9 (1977).

... to shield a carrier from the legitimate purposes of State law where there is no overriding federal interest in Interstate Commerce. Where as here there have been no operations for over twelve years and no attempt at rail service, we can find no benefit in preventing a State condemnation proceeding. (R. Brief of Appellant, following p. 15, "Decision" at p. 5.

It is indisputable that the I.C.C. has thus expressed an aversion to being used as an evasion of duty by the carriers. *De facto* abandonment of a line in contravention of the clear dictates of the law requiring the railcarrier to apply for permission to abandon sixty days before actual abandonment is hardly a legitimate means of retaining control of the property. We agree with the Commission, and furthermore we find it odd that the appellee should expect relief from an Equity Court when with unclean hands it offers its own non-compliance with law as a legitimate reason to bar relief to a plaintiff.

As a proof that the instant appellant has any action whatsoever that could prevail before the I.C.C., all the cited examples *supra* fail. The applicants were either railcarriers themselves or states or municipalities, and the reasoning of the decisions is based on public interest. Even assuming that it is possible for an individual leaseholder to file and to prove all the requested informations required by the Act, it is not a simple nor a desirable solution to the instant problem.

More relevant to our own case are the facts of *Lacy v. East Broad Top Railroad and Coal Co.,* 168 Pa.Super. 351, 77 A.2d 706, 710 (1951), where the judgment of the lower court to sustain preliminary objections was also reversed. In that case, the mere existence of a certification of abandonment issued by the I.C.C. was held to be insufficient to prove abandonment, and the appellate court found that the lower court should properly have tried the property and contractual rights involved, and should have made its own determination of abandonment by the trier of fact:

The Commission did not attempt to, and manifestly could not, determine or adjudicate the property or contractual rights of the parties to this litigation. . . . At most, the proceedings before the Commission constitute only the expression of the railroad's intention to abandon its right of way, the Commission's conditional approval . . . and the consent of the Commonwealth thereto. . . . "The question of abandonment is one of fact for the determination of the jury, depending upon all the facts and circumstances disclosed by the evidence of each particular case." *Lacy v. East Broad Top Railroad & Coal Co.,* 168 Pa.Super. 351, 77 A.2d 706, 710 (1951) and cases cited therein.

The *Lacy* court is not alone in finding that the state court has jurisdiction over questions of law and fact, even where I.C.C. jurisdiction exists, so long as the administrative determination involved is not germane to the solution in the court.

Uniformity of regulation of interstate railroad common carriers, and the supremacy of the federal authority within its sphere, may be secured by appropriate judicial proceedings without preliminary administrative determinations, though the courts may defer judicial action pending authorized administrative determinations in matters where such a course will facilitate the administration of applicable law, particularly where exhaustive consideration of complicated facts and circumstances and statutory administrative discretion are involved: for example, cases involving rates of or unlawful discrimination by common carriers. *Where, however, questions of law,* and not voluminous facts or discretionary administrative functions, *are involved, the courts may act without administrative determinations.* Ultimate review by the federal Supreme Court secures uniformity of regulations and the supremacy of the authority of Congress.

*State ex rel. Davis v. Atlantic Coast Line R. Co.,* 95 Fla. 14, 116 So. 48 (1928). (Emphasis supplied). The instant facts appear uncomplicated, and the issue of "abandonment" is

properly within the scope of the trier of fact and need not be settled administratively prior to trial in court.

The alleged leasehold interest presented by the Complaint in this matter presents an interest in land and in contract-issues absolutely within the province of the common pleas court. Even appellee admits that relief as requested would not be properly administered by the I.C.C. (R. Defendants Brief in Support of Preliminary Objections, p. 2). Those issues can clearly be settled by the court of common pleas of Butler County under its own jurisdiction, without reference to the jurisdiction also present in the I.C.C. to issue a certificate of abandonment after application properly submitted by the appellee to the I.C.C.

The order of the lower court is reversed, the matter is remanded for the filing of an Answer and trial on the merits. It is so ordered.