COMMONWEALTH OF MASSACHU-
SETTS, Plaintiff, Appellant,

v.

Charles W. BARTLETT, Trustee et al.,
Defendants, Appellees.

No. 6940.

United States Court of Appeals
First Circuit.

Nov. 8, 1967.

Richard L. Seegel, Assistant Atty.
Gen., with whom Elliot L. Richardson,
Atty. Gen., was on brief, for appellant.

Sumner H. Babcock, Boston, Mass.,
with whom Bingham, Dana & Gould,
Boston, Mass., was on brief, for Charles
W. Bartlett, Trustee of the Boston and
Providence Railroad Corporation, ap-
pellee.

Robert G. Bleakney, Jr., Boston, Mass.,
with whom James Wm. Moore, New Ha-
ven, Conn., Robert W. Blanchette, New
Haven, Conn., and Sullivan & Worcester,
Boston, Mass., were on brief, for Rich-
ard Joyce Smith and William J. Kirk,
Trustees of the Property of the New
York, New Haven and Hartford Rail-
road Company, appellees.

Before ALDRICH, Chief Judge,
McENTEE and COFFIN, Circuit Judg-
es.

ALDRICH, Chief Judge.

■ This appeal [1] is from a declara-
tory judgment of the district court hold-
ing that appellant, the Commonwealth of
Massachusetts, could not take by eminent
domain certain railroad property in the
"exclusive jurisdiction" of the district
court by virtue of section 77 reorganiza-
tion proceedings, 11 U.S.C. § 205, with-
out first obtaining the consent of the
Interstate Commerce Commission and
the district court, neither of which had
been sought. At the opening of the oral
argument appellant waived its objections
to the first of these rulings and expressly
conceded the necessity of receiving the
consent of the Commission. We consid-
er, accordingly, only the other issue, ex-
cept that we will observe that we be-
lieve appellant's concession to have been
well-advised. 49 U.S.C. § 1(18). Cf.
Thompson v. Texas Mexican Ry., 1946,
328 U.S. 134, 66 S.Ct. 937, 90 L.Ed.

---

1. A companion appeal, No. 6946, by the
Massachusetts Bay Transportation Au-
thority, a state agency, raises no sepa-
rate question.

1132; New Orleans Terminal Co. v. Spencer, 5 Cir., 1966, 366 F.2d 160, cert. denied, 386 U.S. 942, 87 S.Ct. 974, 17 L.Ed.2d 873. With respect to the public interest in interstate transportation, the federal government stands supreme.

The property involved is owned in fee by the Boston & Providence Railroad, which has been in reorganization in the district court for the District of Massachusetts since 1938. At the present time a plan of reorganization has been approved by the court, In re Boston & P.R.R., D.Mass., 1966, 260 F.Supp. 415, appeal dismissed for want of prosecution, March 29, 1967,[2] and is being submitted to creditors and stockholders for confirmation. The property appellant seeks to condemn is part of a right of way which, under the plan, is to be transferred to the New York, New Haven & Hartford Railroad, a substantial creditor. All of this right of way is presently used for railroad purposes by the New Haven in accordance with section 77(c) (6) of the Bankruptcy Act. The portion the Commonwealth wishes to take runs south from Boston about seven miles and has two shorter lines of the New Haven and various sidings running off it. The proposed taking would preclude a railroad operation. Appellee Bartlett is the trustee in reorganization of the Boston & Providence.

The district court asserted the need for its consent simply and succinctly,

"Section 77(e) [sic] of the Bankruptcy Act provides that during the pendency of the reorganization proceedings and for the purposes thereof, this court shall have exclusive jurisdiction of the debtor and its property wherever located. Under this section this court has the power to protect the property within its jurisdiction from interference by suits in other courts and the consent of this court is a jurisdictional prerequisite to the maintenance of any such action." 266 F. Supp. at 392.

"* * * Bankruptcy administration, including reorganization, is a paramount national function which takes precedence over conflicting provisions of the constitution or laws of any state." 266 F.Supp. at 393.

It is true that section 77(a) provides that the court shall have "exclusive jurisdiction of the debtor and its property wherever located, * * *" but the court failed, at least overtly, to consider the qualifying phrase, "during the pendency of the proceedings under this section and *for the purposes thereof,*" (emphasis ours). In view of this limitation its reference to bankruptcy as a "paramount national function" seems too easy an answer. Indeed, we have already held that where there is no sufficient purpose the bankruptcy court's jurisdiction is not exclusive. United States v. New York, N.H. & H.R.R., 1 Cir., 1965, 348 F.2d 151. The court's distinguishing of this case on the ground that the eminent domain taking was there made by the federal government, so that the supremacy clause was not involved, did not go to the heart of the matter; our decision necessarily recognized that the jurisdiction of the bankruptcy court depended upon the need.

In the *New Haven* case the property taken was a small piece of land not used for railroad purposes. No contention was made that the taking interfered with the reorganization, or should not be effected. The question was whether the "exclusive possession" of the reorganization court meant that there was no independent jurisdiction in the district court of the district where the land was located. The trustees conceded in their brief that in the reorganization court they "would not oppose the granting of permission" to have the actual trial in the local district. We held they had no such concern; that the bankruptcy exclusivity was granted only for substantive and substantial purposes, and that none there existed. Correspondingly, the question in the case at bar is not

2. Two attempts to review this action are now pending before the Supreme Court.

resolved by pointing to the phrase "exclusive jurisdiction," but requires the much more difficult determination of whether it is within the purposes of section 77 that the state's power of eminent domain be suspended, or at least made subject to the control of the court, during the pendency of the reorganization proceedings.

The Commonwealth's concession that it cannot proceed without ICC consent focuses scrutiny upon the separate function of the bankruptcy court. The interest of the court in any reorganization is greater than appellant concedes, the prevention of diminution of assets and the achievement of an equitable adjustment among claimants. It has the further object of preserving the corporation as a going concern. "[T]o prevent the attainment of that object is to defeat the very end the accomplishment of which was the sole aim of the section, and thereby to render its provisions futile." Continental Illinois Nat. Bank & Trust Co. of Chicago v. Chicago, Rock Island Ry., 1935, 294 U.S. 648, 676, 55 S.Ct. 595, 606, 79 L.Ed. 1110. However, to the extent that appellees suggest that, because this is a section 77 proceeding, "brigaded with the administrative process of the Commission," in which "the authority of the Court is intertwined with that of the Commission," Palmer v. Commonwealth of Massachusetts, 1939, 308 U.S. 79, 87, 60 S.Ct. 34, 38, 84 L.Ed. 93, the powers of the court are greater than in the usual reorganization proceeding, we must disagree. Insofar as this business is a railroad, affected by a special public interest, this special interest is the concern of the ICC, and not of the court. Ecker v. Western Pacific R. R., 1943, 318 U.S. 448, 473, 63 S.Ct. 692, 87 L.Ed. 892; R.F.C. v. Denver & R.G. W.R.R., 1946, 328 U.S. 495, 508–509, 66 S.Ct. 1282, 1384, 90 L.Ed. 1400. In fact, "[w]hen examined to learn the purpose of its enactment, section 77 manifests the intention of Congress to place reorganization under the leadership of the Commission, subject to *a degree of participation* by the court."

Ecker v. Western Pacific R.R., supra, 318 U.S. at 468, 63 S.Ct. at 705 (emphasis ours). If the court has any function in this particular, see In re Florida East Coast Ry., S.D.Fla., 1949, 81 F.Supp. 926, it is merely one of review to ascertain that constitutional and statutory mandates have been followed and that there is "material evidence" to support the Commission's conclusions. R.F.C. v. Denver & R.G.W.R.R., supra, 328 U.S. at 509, 66 S.Ct. at 1290. Even in the case of the abandonment of a part of the railroad operation at the behest of the trustee under section 77(*o*), the court's only concern is with the economic effect upon the reorganization, and is not with the consequence to public transportation. In re Fonda, J. & G.R.R., 2 Cir., 1938, 95 F.2d 397. Indeed, where there is overlapping of functions, it is the ICC that passes upon the financial aspects of the reorganization, rather than the bankruptcy court that passes upon the public interest aspects. Ecker v. Western Pacific R.R., supra; R.F.C. v. Denver & R.G.W.R.R., supra; Thompson v. Texas Mexican Ry., supra.

Accordingly, the question comes whether the bankruptcy court's general interest in successful reorganizations was intended by Congress to be paramount to a state exercise of the right of eminent domain, for if not, there can be no independent power in the court to refuse to consent. On this question appellant is able to offer no assistance, except to point out that its right to take property for public use is one of great importance, and not readily subordinated. City of Cincinnati v. Louisville & N.R.R., 1912, 223 U.S. 390, 400, 32 S.Ct. 267, 56 L.Ed. 481; State of Georgia v. City of Chattanooga, 1924, 264 U.S. 472, 480, 44 S.Ct. 369, 68 L.Ed. 796. Appellees do furnish one judicial decision, Chicago, R. I. & P. Ry. v. City of Otawanna, 8 Cir., 1941, 120 F.2d 226, where the court held that the city seeking to condemn property in accordance with a grant of authority in its charter, could not take property which had passed into the hands of trustees under section 77 without the consent

of the bankruptcy court. The opinion offers little assistance, however, as it does no more than assert the conclusion of exclusivity of bankruptcy jurisdiction.

Nor have we been able to find any legislative history casting light upon the question. We must, accordingly, approach the problem as essentially one of first impression. In so doing we are led to the conclusion that it is the state's interest, and not that of a successful reorganization that must prevail if they are in conflict.

It is obvious, at the outset, that the state is not here in the position of a creditor. It is not seeking to enforce an existing mortgage, tax lien, Gardner v. State of New Jersey, 1947, 329 U.S. 565, 67 S.Ct. 467, 91 L.Ed. 504, or other such interest which would qualify as a "claim" against the debtor's property under section 77(b), and therefore be subject to alteration or modification in the course of approving a plan under that section. Rather, it possesses a special inchoate interest or right, which is paramount to any interest of the debtor in the property. This is nothing the debtor ever had, or that it, or the court, could convey, qualify, or subordinate to any other claim or interest. There is, as we held in the *New Haven* case, not even a bankruptcy function to determine fair compensation. In sum, with respect to the state's prescriptive rights the court could effect none of the alterations or take any of the actions ordinarily contemplated in a reorganization proceeding. At the most, it could order the state not to proceed. Moreover, the prohibition would be no more than a postponement. The moment the court relinquishes jurisdiction its power is terminated; there can be no prospective prevention. Accordingly, if the state must apply to the court, and the court were to conclude that the proposed exercise of eminent domain would cripple the reorganization, the lethal blow may be diverted from the egg, but it will fall upon the day-old chick at the state's pleasure.

■ Under such circumstances it is difficult to imagine how giving the bankruptcy court a temporary veto would serve the "purposes" (§ 77(a)) of the reorganization. But even if, in some fashion we do not perceive, this could be thought to benefit the debtor, we must hold that it is not the bankruptcy purpose that is paramount. Even to the extent that there is a public interest in the preservation of the going business, this economic interest is inferior to the public interest which is the basis of the state's prescriptive rights. The present reorganization has been, as we have noted, in progress for 29 years. The possibility that a bankruptcy court could be permitted to postpone public rights for such a period is not appealing. Rather, we believe that to accept appellees' position, apart from the protection preserved to the ICC, would not viably improve the prospects of the estate and would be broadly improvident.

The judgment of the District Court is amended by striking out the last four words thereof, "and of this Court," and is otherwise affirmed. No costs.