**In Proceedings for the Reorganization of a Railroad.**

**In the Matter of BOSTON AND MAINE CORPORATION, Debtor.**

**No. 70–250.**

United States District Court,
D. Massachusetts.

Sept. 22, 1970.

**1250**

Charles W. Mulcahy, Jr., Boston, Mass., Counsel for the Trustees of Boston & Maine Corp.

Sidney Weinberg, Boston, Mass., for Boston & Maine Corp.

Donald W. Stever, Jr., Concord, N. H., Attorney for the State of New Hampshire.

Richard F. Cooper, Cooper, Hall & Walker, Rochester, N. H.

R. J. Shortlidge, Jr., Shortlidge & Close, Keene, N. H.

## MEMORANDUM OF OPINION

FRANCIS J. W. FORD, District Judge.

The Trustees of the property of the debtor, Boston and Maine Corporation, have petitioned this court for authorization to apply to the Interstate Commerce Commission for certificates of public convenience and necessity permitting them to abandon six lines of railroad. An order of notice was entered and hearing held pursuant to § 77(o) of the Bankruptcy Act, 11 U.S.C. § 205(o).

The Trustees presented evidence as to the length and condition of the lines sought to be abandoned, the income from these lines in recent years, the cost of maintenance in recent years, the estimated income and expense during the next few years, and the estimated salvage value of the lines if abandoned, including the value of the land.

The court finds, in brief, the following facts as to the financial aspects of the proposed abandonments:

1. Ossipee to Intervale, New Hampshire. This is a line 31.17 miles in length maintained for local freight service. Freight revenue on the line amounted to $40,949 in 1968, $35,532 in 1969 and $9,460 in 1970 (first four months).[1] The "beyond line" costs to be charged against this revenue, computed in accordance with the method approved by the Interstate Commerce Commission amounted to $18,664 in 1968, $16,941 for

---

1. Unless otherwise noted, figures for 1970 are for the period covering the first four months of this year.

1969 and $4,511 for 1970. The costs for maintenance of the line were $13,500 in 1968, $13,155 in 1969, and $4,654 for 1970. The total cost of operating the line, including maintenance of way and structures, maintenance of equipment, transportation expense and car rental, based either on actual costs on the line, or mileage proration of system costs, was $53,341 for 1968, $44,614 for 1969 and $19,260 for 1970. The result is an excess of disbursements over revenue of $29,793 for 1968, $25,100 for 1969 and $13,998 for 1970. Since the line has received maintenance only at a minimum expense level over the last few years, increased maintenance costs would have to be incurred over the next few years if the line is to be kept in condition for safe operation. Over the next five years this would require an average annual expenditure for maintenance of $28,000. As a result the average annual excess of disbursements over revenue during the next five years would be approximately $40,000. The net salvage value of the line in the event of abandonment would be $286,892.

2. Jaffrey to Peterboro, New Hampshire. This line is 5.48 miles long and is maintained for local freight service. In summary, disbursements exceeded revenue on this line by about $4,000, and the estimated average annual excess of costs over revenue for the next five years is $9,500. The net salvage value is $42,613. Petitioners are willing to accept a prohibition against taking up about one mile of track at the southerly end of this line, in order to leave this track available for service for a projected industrial development in that area.

3. Winchendon, Massachusetts to Swanzey, New Hampshire. The line is 20.6 miles long. Disbursements exceeded revenue by $21,000 in 1969, and the estimated average annual excess of costs over revenue for the next five years is $28,000. The net salvage value is $283,735.

4. Keene to Walpole, New Hampshire. This line is 20.7 miles long. The excess of costs over revenue on this line was $22,000 in 1969 and will average $18,000 annually over the next five years. The net salvage value is $236,-157.

5. Sanbornville to Wolfboro, New Hampshire. This line is 12.1 miles long. Costs exceeded revenues by $12,000 in 1969 and the average annual excess during the next five years will be $21,000. The net salvage value is $73,564.

6. Newton Junction, New Hampshire to Merrimac, Massachusetts. This line is 4.4 miles long. Costs exceeded revenues by $3,000 in 1969, and the average annual excess during the next five years will be $8,000. The net salvage value is $34,000.

■■ The court finds that revenue from the operation of these lines is declining, that in recent years the cost of maintaining and operating each of these lines has substantially exceeded the revenue therefrom, that as to each of these lines (except the Keene-Walpole line) maintenance costs to keep the line in safe operating condition will increase during the next few years, that there is no evidence of any real prospect of a significant increase in revenue from these lines in the foreseeable future, and that consequently the continued operation of these lines would result in increased losses to the railroad. Abandonment of these lines would result in a substantial reduction of operating losses, and substantial salvage value would accrue to the debtor's estate. Consequently the court finds that abandonment of these lines is in the best interest of the debtor's estate and of ultimate reorganization.

■ Section 77(*o*) also provides that such abandonment is not to be authorized unless it can be carried out without unduly or adversely affecting the public interest. The parties here disagree as to whether or not the issue of the effect of these abandonments on the public interest is one which should be passed upon at this time by the court or one which should be left entirely to the determination of the Interstate Com-

merce Commission. This court considers the better view on this question to be that expressed in In re Fonda, J. & G. R. Co., 95 F.2d 397, 400 (approved obiter by the Court of Appeals of this circuit, Commonwealth v. Bartlett, 384 F.2d 819, 821) that this court is concerned only with the economic effect of the abandonment on the debtor's estate and reorganization, and that questions of the effect on public interest are to be left to the Interstate Commerce Commission.

However, at the hearing evidence was presented on the issue of public interest as to some of the lines involved and it may therefore be appropriate for the court to make findings on this aspect of the case. This evidence related to the effect of the proposed abandonment on shippers presently receiving service of these lines, and on future economic development in the areas affected.

As to the Ossipee-Intervale line, there was evidence that one manufacturer, Frankson Furniture Company, had in recent years shown some increase in use of the line, shipping 189 cars in 1969 as compared to 129 cars in 1965, but showing a decrease to 53 cars for the first six months of 1970. All its shipments are to a single customer, W. T. Grant Co. About 50% of its shipments are now made by truck. There was testimony that rail service was necessary because there was no connecting truck service available to many of Grant's retail outlets. However, there has been no application made to the Interstate Commerce Commission to establish truck routes to these outlets. Moreover, there was evidence that Grant's system was to be changed in the near future so that shipment would be made to Grant's distribution centers rather than direct to each retail outlet. There was no evidence of the comparative cost of sending by truck the shipments now moving by rail.

On the Winchendon-Swanzey line there is a single shipper, Troy Blanket Mills. Its carloadings have declined from 321 in 1960 to 55 in 1969. It is not located on a siding and now has to use truck transport between its plant and the railroad tracks at Troy. In the event of abandonment of this line, it would have to truck its shipment to and from Keene, New Hampshire at an additional overall cost of $3,500 a year.

On the Sanbornville-Wolfeboro line is located T. O. Berry Company, a small firm with 7 employees which shipped 7 cars of its chick pads in 1969 and has shipped 7 in the first six months of 1970. Shipping by truck would increase costs and they fear this would result in loss of ⅓ of their business to competitors.

The Jaffrey-Peterboro line is used by the Peterboro Basket Company. Its shipments have been decreasing in recent years. The company blames this on poor service furnished by the railroad. Abandonment of the line would result in some increase in shipping costs to the company.

Each of these shippers optimistically predicted an increase in its rail shipments if the line which serves it continues in operation, and there was testimony as to the prospects of future industrial development in the areas served by some of these lines. There was nothing in the evidence, however, to show that these projections of future development are based on firm facts rather than on hopeful speculation.

■■ What has been shown here at most is that as to four of these lines there is a small business which will suffer some inconvenience and increase in costs if the line is abandoned, and that this in turn may have some detrimental effect on the economy of the local community.

This is a factor to be considered in passing on the issue of public interest. But the effect on the local community and individual interests must be balanced against the need of debtor in its present financial situation to be freed from the burden of these unprofitable lines. Colorado v. United States, 271 U. S. 153, 168, 46 S.Ct. 452, 70 L.Ed. 878.

A "shipper cannot insist that a burdensome line be maintained solely for his own benefit." Moeller v. I. C. C., D.C., 201 F.Supp. 583, 589.

On the evidence here presented the court finds, if such a finding is required, that the proposed abandonments would not unduly or adversely affect the public interest within the meaning of § 77(*o*).

The Trustees' petitions for authorization to apply to the Interstate Commerce Commission will be allowed.