FAIRCHILD, Senior Circuit Judge.
 

 The Wisconsin Department of Transportation (WisDOT), appeals from two orders of the district court in the proceeding for reorganization of the Chicago, Milwaukee, St. Paul and Pacific Railroad Company (Milwaukee Road). Order 606-D (appealed from) finalized Orders 606-B and C, authorizing abandonment of the Milwaukee Road’s Janesville to Madison line (and one other line). These orders failed to grant WisDOT’s request for leave to acquire the line by condemnation. Order 606-E (appealed from) declared that Wisconsin may not exercise the power of eminent domain over the property of the Trustee. It also declared that the Trustee has no general duty to remove all bridges and highway crossings unless the railroad crossing was constructed over an already existing highway.
 

 The Milwaukee Road is a railroad carrier engaged in interstate commerce. In 1977 it operated over 10,000 miles of rail lines in the midwestern and western portions of the United States. Following three years of financial losses totaling approximately $100,000,000 it filed, on December 19,1977, a petition for reorganization pursuant to § 77 of the Bankruptcy Act. The district court approved the petition and appointed the Trustee on February 13, 1978.
 

 On June 7, 1982 the Trustee filed an application with the Interstate Commerce Commission (ICC) to abandon a 36.4 mile branch line (the Madison line) running between Janesville, Wisconsin and Madison, Wisconsin. The proceeding also dealt with the Beloit line, but that part is not challenged on appeal. This procedure is specified by 45 U.S.C. § 904(a)(1) and 11 U.S.C. § 1170(b) and is implemented by 49 C.F.R. §§ 1121.60-1121.63 (renumbered 49 C.F.R. §§ 1152.40-1152.43, November 1, 1982). The ICC’s role is to advise the district court, which has the authority to deny or authorize the abandonment.
 

 On August 30, 1982 the ICC submitted its report to the district court recommending abandonment. WisDOT objected to the report and requested the district court to hold a hearing on the requested abandonment under 11 U.S.C. § 1170(a) and (c) and Bankruptcy Rule 8-512(b) (superseded August, 1983 by Rule 6007). On October 19, 1982, the district court referred the matter to a Special Master for hearing. This hearing was held and the Special Master submitted his report on November 11, 1982. The report set forth findings and conclusions and recommended that the Trustee be authorized to abandon the Madison line and be authorized to terminate service “at such time as the Line is sold for continued rail service or on January 16, 1983, whichever occurs earlier.”
 

 The report specified that objections were to be filed with the court no later than noon on November 15, 1982. WisDOT timely submitted a motion which set forth a number of objections to the report. A number of findings of fact were challenged as clearly erroneous and it was argued that certain conclusions of law were incorrect. Reference was made to an earlier filing on November 11, before the report was received, demonstrating that, contrary to the position of the Trustee before the Master,
 
 *1171
 
 there had indeed been bridge traffic
 
 [1]
 
 on the line, the revenue from which should have been considered. The motion requested the court to schedule a hearing on the objections and to enter a proposed order modifying the Master’s recommendations.
 

 The proposed order would have authorized abandonment of the Madison line, but would have required continued service until February 16, 1982, or until sale of the line for continued rail service, whichever occurs earlier, and would have granted leave to Wisconsin to condemn the line in Wisconsin courts under Wisconsin statutory procedure.
 

 WisDOT counsel and counsel for the Trustee appeared briefly before the district court the afternoon of November 15, the same day WisDOT’s objections had been filed. We have read the twelve pages of transcript, and although the Trustee argues here that this colloquy constituted the hearing on objections, required by Rule 53(e)(2), Fed.R.Civ.P., concededly applicable to the proceeding, we cannot agree. The judge announced that he would take the objections under advisement and rule on them. WisDOT asked for a hearing on the objections. The court said “You have already had a hearing,” doubtless referring to the hearing before the Master. There was a colloquy concerning the new information about bridge traffic and whether counsel for the Trustee wished to file any responsive memorandum. At that point WisDOT counsel said “We respectfully request the Court to schedule a hearing on our objections.” The court responded “I will do that on the written documents.” Ultimately the court remarked “Anyway, I will decide these on the pleadings that I have. There won’t be any hearing here. If it appears that it is necessary to have a further hearing, it would go back to the master for that purpose.” Counsel for WisDOT clearly did not have nor waive a meaningful opportunity to argue the objections before the district court.
 

 On December 17, 1982, the district court entered Order 606-B. It overruled the objections of both the Trustee and WisDOT, directed operation until January 30, 1983, and authorized the Trustee to abandon “no sooner than January 30, 1983.” The form of the order is consistent with finality, with one significant exception. After describing the controversy over bridge traffic, the order said “To consider reopening the hearings on this point, the Trustee is ordered to file a specific counter-affidavit, within one week hereof.”
 

 On December 23 the Trustee filed his own statement and a statement of Mr. Wehling, his Manager of Technical Planning. On December 29, 1982, the court entered Order 606-C, noting that it now appeared there had been bridge traffic, and a resulting excess of revenue over costs. The order concluded:
 

 Therefore the information required by this court in Order 606-B, and not provided by Mr. Wehling, is necessary for this court to decide between continuing service and abandoning service on the line in question. The trustee should devise a way to give this court an estimate of net bridge traffic revenue per year, affording the objectors the information and its source, without undue delay.
 

 On January 20, 1983 the Trustee filed an affidavit responsive to Orders 606-B and 606-C. On January 25, 1982, without any further notice or action by the district court, the Trustee distributed a national embargo notice on the line effective January 30, 1983. On January 31, 1983, the Trustee discontinued service on the line.
 

 On February 2, 1983, WisDOT gave notice of a motion, to be heard February 7, 1983, seeking an “Order Regarding Status of Madison Line.” The motion called the court’s attention to the Trustee’s statement filed January 20, the fact that the court had not acted thereon, and the allegedly unauthorized discontinuance of service. In addition WisDOT asserted that the court had overlooked common-law requirements
 
 *1172
 
 as to removal and restoration of bridges and crossings on abandonment, and that the court had failed to rule on WisDOT’s request for leave to acquire the line by eminent domain.
 

 On February 14, 1983, the district court issued Order 606-D (appealed from) declaring that Order 606-B was self-executing and the Trustee’s action of embargoing the lines was proper and within the authority granted him by the court.
 

 On February 15, 1983, the district court issued Order 606-E (also appealed from) declaring that (1) the Trustee had no general duty to remove all bridges and highway crossings in Wisconsin because there is no general common-law duty to do so unless the railroad crossing was constructed over an existing highway and (2) the State of Wisconsin may not exercise eminent domain power over the property of the Trustee.
 
 [2]
 
 The order also instructed the Trustee to enter into an agreement with the Southwestern Wisconsin Transportation Corp. (SWTC) to transfer operation of the Madison-Janesville line to SWTC and to restore the removed track to the extent necessary for the performance of a detour agreement between the Trustee and SWTC dated July 1, 1982.
 
 [3]
 

 The Rules of Bankruptcy Procedure governing railroad reorganization under Chapter VII (Section 77) of the Bankruptcy Act provided for the applicability of certain Federal Rules of Civil Procedure. Bankruptcy Rule 8-703(a) provided: “Federal Rules of Civil Procedure — Rules 6, 43-46, 53 ... of the Federal Rules of Civil Procedure apply in Chapter VII cases.” Rule 53(e)(2) provides:
 

 (2)
 
 In non-jury actions.
 
 In an action to be tried without a jury the court shall accept the master’s findings of fact unless clearly erroneous. Within 10 days after being served with notice of the filing of the report any party may serve written objections thereto upon the other parties. Application to the court for action upon the report and upon objections thereto shall be by motion and upon notice as prescribed in Rule 6(d). The court after hearing may adopt the report or may modify it or may reject it in whole or in part or may receive further evidence or may recommit it with instructions.
 

 Fed.R.Civ.P. 53(e)(2).
 

 One who files objections to the. report of a Special Master thus has a right to be heard on those objections before the court acts on the report. This is so even though the objector’s arguments have been presented and considered before the Master and have been filed in writing before the court.
 
 In Re Wonderbowl,
 
 424 F.2d 178 (9th Cir.1970).
 

 As already stated, WisDOT had no meaningful hearing before the court on its objections. Logically, and particularly because its objections challenged the merits of the decision to authorize abandonment, this lack of hearing would lead us to vacate or reverse Orders 606-B, C, and D, insofar as they authorized abandonment of the Madison line.
 

 That does not, however, appear to be the position of WisDOT. Accompanying Wis-DOT’s objections was a proposed order the district court was asked to enter. The proposed order would have authorized termination of service until February 16, 1982,
 
 *1173
 
 and would have granted WisDOT leave to condemn the property of the line in Wisconsin statutory proceedings unless the line was “sold for continued rail service before that date.”
 

 The Conclusion of WisDOT’s brief here on appeal “requests this Court to reverse Orders No. 606D and 606E with instructions to grant leave to WisDOT to condemn the abandoned rail property in Wisconsin Courts under Wisconsin law by award of compensation under
 
 Wis.Stat.
 
 32.05(7) to the Trustee, pursuant to Wisconsin’s condemnation laws,
 
 Wis.Stat.
 
 85.09 and ch. 32, unless the line is sold for continued rail service to a private party before June 30, 1983.”
 

 Because of the position taken by appellant, we do not address the merits of the court’s grant of authority to abandon the line, but rather the court’s failure in 606-B, C, and D to grant the requested leave for condemnation, and the declaration in 606-E that the State of Wisconsin may not exercise eminent domain power over the property of the Trustee.
 

 The Trustee argues, in part, that the automatic stay as well as the district court’s express injunction applies to proceedings to condemn a railroad line. We agree. In a companion case,
 
 Appeal of the City of New Hampton,
 
 738 F.2d 209, we hold that because of the exclusive jurisdiction conferred upon the reorganization court, a municipality’s eminent domain proceeding, brought without leave of the reorganization court, is void.
 

 That holding, however, does not control the present case. Here WisDOT has requested leave, and the question is whether the district court abused its discretion in not granting WisDOT leave to condemn the property once such a request was made.
 

 Section 77(a) of the Bankruptcy Act reads in part:
 

 If the petition is so approved, the court in which the order is entered shall, during the pendency of the proceedings under this section
 
 and for the purposes thereof,
 
 have exclusive jurisdiction of the debtor and its property wherever located, and shall have and may exercise in addition to the powers conferred by this section all the powers, not inconsistent with this section which a court of the United States would have, had if it had appointed a receiver in equity of the property of the debtor for any purpose.
 

 (Emphasis added.) In addition, § 77(j) of the Act specifically provides that the judge may enjoin or stay the commencement or continuation of suits against the debtor until after final decree. The reorganization court may properly stay any court proceedings which interfere with its exclusive jurisdiction and may enjoin acts which are subversive of its efforts to accomplish a proper reorganization. Exclusive jurisdiction was granted, however, for substantive and substantial purposes, and where there is no sufficient purpose to be served, the bankruptcy court must readily relax its jurisdiction.
 
 See Calloway v. Benton,
 
 336 U.S. 132, 69 S.Ct. 435, 93 L.Ed. 553 (1949) (while § 77(a) of the Bankruptcy Act gives the bankruptcy court exclusive jurisdiction of the debtor and its property, it does not give the bankruptcy court exclusive jurisdiction over all controversies that in some way affect the debtor’s estate).
 
 See also Commonwealth v. Bartlett,
 
 384 F.2d 819 (1st Cir.1967),
 
 cert. denied,
 
 390 U.S. 1003, 88 S.Ct. 1245, 20 L.Ed.2d 103 (1968);
 
 United States v. New York, New Haven & Hartford Railroad Co.,
 
 348 F.2d 151 (1st Cir.1965).
 

 The- condemnation of the line upon abandonment will not in any way interfere with the rehabilitation of the Milwaukee Road as a functioning railroad. The federal interest in continued railroad operation has terminated. The Interstate Commerce Commission has recommended abandonment. The reorganization court has found abandonment appropriate and has authorized it. It does not appear that the actual taking of the property out of the debtor’s estate would have an adverse impact on the prospects for an effective reorganization. The state’s interest in the exercise of its power of eminent domain is only in collision
 
 *1174
 
 with whatever interest the Trustee has in retaining the property or disposing of it otherwise.
 

 This type of conflict was considered by the First Circuit in
 
 Commonwealth v. Bartlett,
 
 384 F.2d 819 (1st Cir.1967),
 
 cert. denied,
 
 390 U.S. 1003, 88 S.Ct. 1245, 20 L.Ed.2d 103 (1968). There the state conceded that before condemnation of a portion of railroad right of way, it must obtain the consent of the ICC. Apparently assuming that the federal interest in the continued operation of the railroad line would be adequately protected by the ICC, the court considered whether other purposes of a reorganization proceeding would predominate over the state’s power of eminent domain. The court addressed the question “whether the bankruptcy court’s general interest in successful reorganizations was intended by Congress to be paramount to a state exercise of the right of eminent domain.” 384 F.2d at 821. The court was “led to the conclusion that it is the state’s interest, and not that of a successful reorganization that must prevail if they are in conflict.”
 
 Id.
 
 at 822. Noting that the bankruptcy court would in any event have a veto only during the pendency of the proceeding, the court said, “But even if, in some fashion we do not perceive, this could be thought to benefit the debtor, we must hold that it is not the bankruptcy purpose that is paramount. Even to the extent that there is a public interest in the preservation of the going business, this economic interest is inferior to the public interest which is the basis of the state’s prescriptive rights.” Id.
 
 [4]
 

 In the companion case,
 
 Appeal of the City of New Hampton,
 
 we have rejected the ultimate conclusion of
 
 Bartlett
 
 that the state could proceed to condemn without leave of the reorganization court, but we do think
 
 Bartlett
 
 correctly counsels deference to the state’s eminent domain function.
 

 As we say in
 
 Appeal of the City of New Hampton:
 

 We think the guiding principle should be to permit the exercise of the power of eminent domain to the greatest extent consistent with the purposes of the reorganization proceeding, but the reorganization court is to make the initial decision as to the appropriate accommodation between them.
 

 738 F.2d 209, 214 (1984).
 

 In declaring, in Order 606-E, that the State of Wisconsin may not exercise eminent domain power over the property of the Trustee the district court referred to its Order 641 issued in New Hampton.
 
 See
 
 footnote 2. There the court had said:
 

 The rationale and justification for orders preserving the Trustee’s control over his property wherever located is clear to us. He and this court must have the discretion to decide what property should be retained in the estate, what property is necessary for the continued operation of a railroad which is being reorganized, and what property must be abandoned or sold. In the latter situation, the Trustee and his agents must retain the discretion to obtain the most advantageous price for any property which is sold, and they should not be required to submit to condemnation proceedings for forced sales....
 

 ... The Trustee and creditors would suffer irreparable harm if condemnation
 
 *1175
 
 proceedings were allowed to deprive them of certain real estate in Iowa for a price which is not fair and reasonable to the estate. Nor does the Trustee have an adequate remedy at law in the event the condemnation proceedings in Iowa should produce this result, since by definition the price reached in the condemnation proceedings is not one reached by an arm’s-length bargaining or which can be remedied if it does not produce a satisfactory conclusion for the Trustee and the estate.
 

 The district court apparently felt that the Trustee could obtain more dollars for the property by negotiation than through eminent domain proceedings to determine just compensation for property taken. This may be true because exclusive jurisdiction, if unrelaxed, would provide the Trustee with leverage, or hold-out power.
 

 The Constitution, however, mandates just compensation for private property taken for public use, and the judicial proceedings provided by the eminent domain law of Wisconsin are structured to guarantee that result. The state’s right to take property for public use is an attribute of sovereignty, of great importance. We do not deem the possibility that the Trustee may obtain a higher price through negotiation a purpose of reorganization properly to be served by refusal to relax exclusive jurisdiction.
 
 See Chicago and Northwestern Transportation Co. v. U.S.,
 
 678 F.2d 665, 668 (7th Cir.1982) (discussion of congressional attitude toward “hold-out” powers, particularly where a buyer plans to continue rail service).
 

 We therefore reverse Orders 606-B, C, and D, but only insofar as they denied leave to acquire the Madison line by condemnation. We vacate Order 606-E. That order not only declared that the state could not exercise eminent domain powers, but also made a declaration as to the Trustee’s duty to remove bridges and .highway crossings. The Trustee appears to concede that the text of the declaration is inaccurate at least in failing to refer to crossing of a watercourse as well as a highway. For that reason, and because the issues in this respect are not clearly defined at this stage of the proceedings, we vacate the entire order rather than attempt to correct a portion of it.
 

 So Ordered.
 

 [1]
 

 . Bridge traffic, also called overhead traffic, refers to carloads of goods which are carried over a line segment but are not picked up from or delivered to a shipper on the line segment.
 

 [2]
 

 . The court referred to its Order 641. That order was issued December 30, 1982 and involves a controversy between the City of New Hampton, Iowa and the Trustee of the Milwaukee Road. The district court found that the City had proceeded in violation of the court’s Order Number One enjoining all persons from commencing or continuing any court or other proceedings against the Debtor when the City initiated eminent domain proceedings against some of Milwaukee Road’s property in Iowa. The City appealed this order in a companion case,
 
 Appeal of the City of New Hampton,
 
 738 F.2d 209 (1984), argued the same day as the present case. We have affirmed Order 641.
 

 [3]
 

 . We need not decide whether abandonment has technically occurred. The Milwaukee Road discontinued its service, and a few lengths of track were removed. SWTC has, however, performed local rail service, and presumably will continue under a contract which runs until June 30, 1984.
 

 [4]
 

 . In
 
 Hayfield Northern R.R. v. Chicago & North Western,
 
 693 F.2d 819 (8th Cir.1982), the Eighth Circuit held that use of a state law authorizing condemnation of an abandoned line for continuing rail service would frustrate the accomplishment of the purpose of Congress in enacting a very detailed procedure whereby the ICC regulates the purchase or subsidy for continued operation of lines about to be abandoned under ICC authority. The Supreme Court reversed, holding that the proposed application of the state condemnation law is not prempted. - U.S.-, 104 S.Ct. 2610, 81 L.Ed.2d 527 (1983). Title 49 U.S.C. § 10905, the federal statute involved in
 
 Hayfield,
 
 is inapplicable to a line abandoned during the course of a reorganization proceeding, as here. Although the situations are different, we think the Supreme Court’s decision in
 
 Hayfield
 
 generally supports the proposition that exercise of the state's power of eminent domain should not readily be found to conflict with the purposes of federal law.