46 F.3d 1133
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Lindsay GRAVES, Jr., Plaintiff-Appellant,
v.
Marvin T. RUNYON, United States Postmaster General,
Defendant-Appellee.
 No. 93-3076.
 United States Court of Appeals, Seventh Circuit.
 Argued Jan. 11, 1995.
Decided Feb. 6, 1995.
Rehearing and Suggestion for Rehearing En Banc
Denied April 13, 1995.
 
 1
 Before CUMMINGS and FLAUM, Circuit Judges, and PAINE, District Judge*.
 
 ORDER
 
 2
 Former postal employee Lindsay Graves Jr. brought suit claiming that he was discharged by the postal service in retaliation for filing an Equal Employment Opportunity Commission ("EEOC") complaint alleging sexual harassment by three postal supervisors. The district court held otherwise and Graves now appeals. We affirm.
 
 Background
 
 3
 Graves was a postal clerk at the Ontario Street Station in Chicago. From 1982 until his termination in 1985, he had numerous disciplinary problems. In 1982 he received a letter of warning for irregularities in postage accountability. In 1983 he received three letters of warning for failure to keep regular attendance, for failure to follow instructions, and for failure to adhere to uniform regulations. Again in 1983 he was suspended twice, five days for failure to follow instructions and ten days for unauthorized presence on the workroom floor and unauthorized absence from assignment. In 1984 he received two separate fourteen-day suspensions for being absent without official leave and for a shortage in his flexible accountability. Also, in late 1984 his immediate supervisor, Ms. Mayhew, attempted to have him terminated. Graves filed a grievance and the termination was commuted to a 42-day last-chance suspension for failure to maintain an acceptable attendance record and failure to follow instructions. In May 1985 another notice of termination was filed against him which stuck. This final notice was based on tardiness, failure to follow instructions with respect to breaks and parking, dress code violations and unauthorized extension of travel time. This notice was again instigated by Graves' immediate supervisor Ms. Mayhew. Manager Edwards of the Ontario Station concurred in the action and provided some of the complaints included in the notice which resulted in Graves' termination.
 
 
 4
 For his part, Graves did not take these assaults lying down. Beginning in 1982 he filed a barrage of EEOC complaints alleging racial and sexual discrimination against almost everybody in sight, including numerous supervisors, an EEOC counselor and the arbitrator in the grievance proceeding which followed his termination. Graves now admits that not all of his complaints were well founded (Tr. 314). His EEOC complaint, which according to Graves precipitated his termination, was filed in February 1985. In it he alleges the following incidents of sexual harassment by three postal supervisors: (1) Ms. Edwards found him in the mens' restroom with his pants down, (2) Ms. Montgomery touched his person and attempted to look under his uniform shirt, (3) Mr. Payne "disrespected [Graves] as a man" when he accosted him for being out of uniform. Of the three, only Ms. Edwards had a substantial role in Graves' termination.
 
 
 5
 Perhaps not surprisingly, these three incidents--with substantially different shadings--found their way into Graves' notice of termination. According to Ms. Edwards, Graves had his pants on but was away from his counter window at 4:45 p.m., a peak time, reading a magazine at a table in the swing/mens' locker room. This was one of the incidents cited in support of the charge that Graves failed to follow instructions not to take personal breaks during peak times. The other two incidents were situations in which he was wearing colored shirts or ties which showed under or above his yellow uniform shirt. These incidents were cited to support the charge that Graves failed to adhere to uniform dress code regulations.
 
 
 6
 After receiving his termination notice, Graves filed a union grievance. He lost. The arbitrator found that Graves was terminated for just cause. Graves next filed an EEOC complaint alleging (as does his present suit) that he was fired in retaliation for his sexual harassment and sexual discrimination EEOC complaint. After a hearing the administrative law judge ("ALJ") recommended a finding of no discrimination in Graves' discharge. The Postal Service and the EEOC adopted this finding of the ALJ as the agency's final decision, and the EEOC issued Graves' notice of right to sue on May 9, 1990.
 
 
 7
 Graves filed a pro se complaint in the present action on June 14, 1990. He was later appointed counsel and filed an amended complaint on February 6, 1991. On January 14, 1992, Graves' motion to proceed pro se was granted and his lawyers withdrew. The district court referred the case to a magistrate judge pursuant to 42 U.S.C. Sec. 2000e-5(f)(5). Graves testified and called twelve witnesses during a four-day bench trial held before the magistrate judge.
 
 
 8
 On December 7, 1992, the magistrate judge issued a report finding that Graves was fired because of his disciplinary problems and not in retaliation for his EEOC sexual harassment complaint. Graves filed objections to the magistrate judge's report but did not request a hearing before the district court. The district court considered Graves' objections but ultimately adopted the magistrate judge's report and entered judgment for the Postal Service on July 13, 1993. This appeal followed.
 
 Discussion
 
 9
 Graves attacks the district court's adoption of the magistrate judge's report on two grounds, one procedural--that the district court failed to hold a hearing, and one substantive--that the report was clearly erroneous.
 
 I. Right to a hearing under Rule 53(e)(2)
 
 10
 Federal Rule of Civil Procedure 53(e)(2) states:
 
 
 11
 In an action to be tried without a jury the court shall accept the master's findings of fact unless clearly erroneous. Within 10 days after being served with notice of the filing of the report any party may serve written objections thereto upon the other parties. Application to the court for action upon the report and upon objections thereto shall be by motion and upon notice as prescribed in Rule 6(d). The court after hearing may adopt the report or may modify it or may reject it in whole or in part or may receive further evidence or may recommit it with instructions.
 
 
 12
 This Court and others have held that Rule 53(e)(2) grants an objector the right to a hearing before the district court acts on the report of a special master. Matter of Chicago, Milwaukee, St. Paul and Pacific Railroad Company, 739 F.2d 1169, 1172 (7th Cir.1984); Kieffer v. Sears, Roebuck and Co., 873 F.2d 954, 956 (6th Cir.1989); In re Wonderbowl, Inc., 424 F.2d 178 (9th Cir.1970). There is, however, an important difference between these three cases upon which Graves relies and his own situation. In each of these cases the objecting parties made clear to the district court their desire for a hearing. In Matter of Chicago and Kieffer the objecting parties requested a hearing at the time they filed their objections. It is not clear from the Wonderbowl opinion whether the objector followed this same procedure, but it is clear that the objector made the district court aware of his desire for a hearing by requesting and being granted a continuance. The hearing was scheduled when the district court acted.
 
 
 13
 Neither in his objections nor at any other time did Graves make known to the district court his desire for a hearing. The Eleventh Circuit was faced with this same situation in Golden Door Jewelry v. Lloyds Underwriters, 8 F.3d 760 (11th Cir.1993), and refused to reverse the district court's adoption of a special master's report where the objecting party never requested a hearing in the district court. The Court of Appeals noted:
 
 
 14
 At no time did consignors suggest to the district court that oral argument was either desired or required. This court will not overturn the district court's adoption of the special master's report on a procedural technicality consignors have discovered only on appeal.
 
 
 15
 Id. at 768. We agree with the Eleventh Circuit. His right to a hearing in the district court is not a card that Graves can hold in reserve to spring in this Court after an adverse ruling by the district court on his written objections. It is true that Graves was proceeding pro se at the time he filed his objections. It is also true, however, that this was the result of his own decision to fire his court-appointed counsel. Moreover, it cannot be disputed after reading the record in this case that Graves has already used more than his share of judicial and administrative resources.
 
 
 16
 II. Correctness of Magistrate Judge's findings
 
 
 17
 Graves makes the same argument to this Court that he made before the magistrate judge, that the Postal Service's stated reasons were pretextual because other employees who committed the same violations listed in Grave's termination notice were treated less harshly. We reject this argument for the same reasons it was rejected by the magistrate judge and the district court.
 
 
 18
 First, Graves has failed to establish that violations of other employees were equivalent to his own.[1] Second, under the Postal Service's progressive disciplinary policy, the severity Graves failed to establish that other employees who were allegedly treated more favorably had anywhere near Graves' history of disciplinary problems. Finally, supervisors Mayhew and Edwards, who signed his final notice of removal, had tried to get him removed in 1984 before he filed the EEOC complaint that was the purported cause for retaliation.
 
 
 19
 For these reasons, we conclude that the district court's and magistrate judge's finding that Graves was fired for legitimate non-retaliatory reasons is not clearly erroneous.
 
 
 20
 Affirmed.
 
 
 
 *
 The Honorable James C. Paine of the Southern District of Florida is sitting by designation
 
 
 [1]
 Graves argues that another employee was tardy more often than he was and was only counseled and not otherwise punished. But a supervisor testified that the other employee was only a few minutes late and would voluntarily work later to make up for it, something Graves did not do. Similarly Graves argues that others parked in the loading dock and were not punished. But Graves was the only one who was reported to have threatened the driver and caused him to return his load. Graves further argues that other employees took washroom breaks during peak hours without authorization. His supervisors responded that only Graves would leave his counter window for 20 or 30 minutes at a time without authorization to read magazines or talk on the phone